UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT SCOTT, CDCR #AK5483,<br><br>                          Plaintiff,<br><br>vs.<br><br>JAMES HILL, JOHN/JANE DOE, GAIL MESSLER, DAVID GULDSETH, DAVID CLAYTON, JAMES E. BATES, MARK JACOBSON, AMIR MOHAMED, PEYMAN SHAKIBA,<br><br>                         Defendants. | Case No.: 3:24-cv-2400-WQH-MSB<br><br>**ORDER: (1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS [ECF No. 2];**<br><br>**(2) DISMISSING COMPLAINT FOR FAILURE TO STATE A CLAIM PURSUANT TO 28 U.S.C. §§ 1915(e)(2)(B) AND 1915A(b)** |

## I.   INTRODUCTION

Plaintiff Robert Scott ("Plaintiff" or "Scott"), a state inmate proceeding *pro se*, has filed a civil rights complaint pursuant to 42 U.S.C. § 1983, along with a motion to proceed *in forma pauperis* ("IFP"). *See* ECF Nos. 1, 2. In his Complaint, Scott alleges Defendants violated his Eighth Amendment right to adequate medical care by delaying total knee replacement surgery for both knees, subsequently "botching" the surgeries and failing to adequately treat his pain. *See generally*, ECF No. 1. As discussed below, the Court grants Plaintiff's IFP motion and dismisses the Complaint without prejudice.

## II.   MOTION TO PROCEED IFP

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $405.[1] *See* 28 U.S.C. § 1914(a). A party may initiate a civil action without prepaying the required filing fee if the Court grants leave to proceed IFP based on indigency. 28 U.S.C. § 1915(a); *Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007).

To proceed IFP, plaintiffs must establish their inability to pay by filing an affidavit regarding their income and assets. *See Escobedo v. Applebees*, 787 F.3d 1226, 1234 (9th Cir. 2015). Prisoners must also submit a "certified copy of the [prisoner's] trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. §§ 1915(b)(1) & (4). Prisoners who proceed IFP must repay the entire fee in installments regardless of whether their action is ultimately dismissed. 28 U.S.C. § 1915(b)(2); *Bruce v. Samuels*, 577 U.S. 82, 84 (2016).

In support of his IFP Motion, Scott has provided a copy of his prison certificate and trust account statement. ECF No. 2. During the six months prior to filing suit, Martinez had an average monthly balance of $13.90 and average monthly deposits of $13.14; and at the time he filed suit he had an available account balance of $0.05. *Id*. at 7. Accordingly, the Court **GRANTS** Plaintiff's IFP motion. Because the initial installment would amount to more than Plaintiff's available funds, the Court assesses no initial payment. Instead, Scott must pay the full $350 filing fee in installments, pursuant to 28 U.S.C. § 1915(b)(2).

---

[1] Civil litigants must pay an administrative fee of $55 in addition to the $350 filing fee. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2023)). The additional $55 administrative fee does not apply to persons granted leave to proceed IFP. *Id*.

### III. SCREENING PURSUANT TO 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b)

#### A. Legal Standards

Pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), the Court must screen a prisoner's IFP complaint and *sua sponte* dismiss it to the extent that it is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (*en banc*); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010). "The standard for determining whether Plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). Rule 12(b)(6) requires that a complaint "contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). While detailed factual allegations are not required, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. *Id*. The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id*.

To state a claim under § 1983, a plaintiff must plausibly allege "both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

#### B. Plaintiff's Allegations

The facts alleged in the body of the Complaint are somewhat sparse. Scott states that starting in late 2017, he began complaining to RJD medical staff of chronic and "continuous" pain in both knees due to "preexisting osteoarthritis." ECF No. 1 at 4.

Scott was seen by Dr. Messler on occasion between August 2018 and August 2019 and during that time Scott continued to suffer extreme pain, but Messler did not prescribe narcotics to treat it. *Id.* at 7. Between September 11, 2019 and December 11, 2019, Dr. Guldseth also declined to prescribe Plaintiff narcotics for his knee pain, noting that "not

using narcotics[,] as risk outweighs the benefits." *Id.* at 8. Scott further alleges Guldseth falsely noted in Scott's medical chart that his pain level had improved. *Id.*

It appears that Scott was referred to see a surgeon sometime around May 11, 2020. *Id.* at 9. Scott then had a medical appointment with Dr. Bates to determine if he was a candidate for total knee replacement ("TKR") surgeries. *Id.* at 9–10. Ultimately, Scott was approved for the surgeries. *Id.*

On June 19, 2021, Bates performed TKR surgery on Scott's left knee and on May 25, 2022, he performed the same surgery on Scott's right knee. *Id.* at 9. Bates was assisted by Dr. Jacobson for the second surgery. *Id.* at 10. Scott states that he continued to suffer pain and swelling in both knees after the surgeries. *Id.* at 9. He alleges both surgeries were "botched" and hardware in both of his knees later became "loose." *Id.* at 9–10.

After the surgeries, Scott was seen by Dr. Mohamed, who "refus[ed]" to treat his pain with narcotics. *Id.* at 10. Dr. Shakiba also treated Scott after the surgeries but minimized his complaints and accused him of "lying about [his] medical needs just to get drugs." *Id.* at 11. Shakiba also told Scott it was "impossible to have loose hardware when all you have is a solid-cast implant." *Id.*

In sum, Scott alleges that starting in September 2017, Defendants were "on notice" that he suffered from osteoarthritis in both knees and failed to adequately treat his pain before and after he received two TKR surgeries. *Id.* at 11–12. He also asserts both surgeries were "botched," and he continues to suffer severe pain as a result. *Id.*

**C.    Discussion**

Scott alleges Defendants violated his Eighth Amendment rights by failing to provide him with adequate medical care. He names nine defendants, in both their official and individual capacities: RJD Warden Hill, RJD "Nurse Executive" John/Jane Doe, and Doctors Messler, Gulseth, Clayton, Bates, Jacobson, Mohamed, and Shakiba. *Id.* at 3. He seeks money damages. *Id.* at 17.

1.    <u>Rule 8</u>

As an initial matter, the Court cautions Plaintiff that his Complaint is subject to

1  Federal Rule of Civil Procedure 8, which requires that it contain "'a short and plain
2  statement of the claim showing that the pleader is entitled to relief,' in order to 'give the
3  defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell*
4  *Atlantic Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (alteration in original). While Rule 8
5  "does not require 'detailed factual allegations,' . . . it demands more than an unadorned,
6  the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*,
7  550 U.S. at 555). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation
8  of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders
9  'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (citations omitted).
10 Moreover, a complaint that is too verbose, long, confusing, redundant, irrelevant, or
11 conclusory may be dismissed for failure to comply with Rule 8. *See Cafasso v. Gen.*
12 *Dynamics C4 Sys.*, 637 F.3d 1047, 1058–59 (9th Cir. 2011) (collecting cases upholding
13 dismissals for those reasons). The purpose of Rule 8(a) is to ensure that a complaint "fully
14 sets forth who is being sued, for what relief, and on what theory, with enough detail to
15 guide discovery." *McHenry v. Renne*, 84 F.3d 1172, 1177 (9th Cir. 1996).

16        Here, while some specific facts are alleged in the body of Scott's Complaint, many
17 allegations are conclusory and lack sufficient detail as to what exactly each individual
18 defendant did to violate Scott's rights. Instead, Plaintiff has attached some 24 exhibits,
19 (totaling 151 pages) to the Complaint which he references (without providing citations to
20 a specific page number), presumably to provide factual support for the broad allegations
21 contained in the body of the Complaint. *See* ECF No. 1-2. A plaintiff may refer to and
22 attach exhibits as necessary to support factual allegations contained in his Complaint;
23 however, the Court is not obligated to sift through multiple exhibits to find a factual basis
24 for Plaintiff's individual claims. *See Quezada v. Sherman*, 2018 WL 6111289, at *3 (E.D.
25 Cal. 2018) (stating a plaintiff "may not merely cite to an exhibit and expect the Court to
26 extrapolate specific facts from it upon which Plaintiff might base a claim; rather, must state
27 the factual evidence derived from the exhibit in his allegations and may only cite to the
28 exhibit to bolster/support his factual allegations"); *Stewart v. Nevada*, 2011 WL 588485,

at *2 (D. Nev. 2011) ("The Court will not comb through attached exhibits seeking to determine whether a claim possibly could have been stated where the pleading itself does not state a claim. In short, Petitioner must state a claim, not merely attach exhibits.").

Despite the above, and while "it is not the Court's duty" when screening a complaint pursuant to 28 U.S.C. § 1915(e) and § 1915A "to wade through exhibits to determine whether cognizable claims have been stated," *Woodrow v. Cty. of Merced*, 2015 WL 164427, at *4 (E.D. Cal. 2015), in this instance the Court will consider Plaintiff's exhibits to the extent they flesh out some further detail as to the bases for his claims. *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (reaffirming liberal construction of pro se pleadings after *Iqbal*).

    2.    <u>Eighth Amendment</u>

        a.    *Legal Standard*

The Eighth Amendment prohibits "cruel and unusual punishments." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). To state an Eighth Amendment claim based on inadequate medical care, a prisoner must plausibly allege they had a "serious medical need," and the defendant was "deliberately indifferent" to that need. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

The test for deliberate indifference has objective and subjective components. To satisfy the objective prong, the plaintiff must show a "serious medical need, by establishing that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *Jett*, 439 F.3d at 1096 (quoting *Estelle*, 429 U.S. at 104). To satisfy the subjective prong, the plaintiff must allege the defendant's response to the need was deliberately indifferent by showing "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm cause by the indifference." *Id.* Put another way, a plaintiff must show the official knew of and disregarded "excessive risk to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004). "The official must not only be aware of facts from which the inference

could be drawn that a substantial risk of serious harm exists," but that official "must also draw the inference." *Id*.

"Deliberate indifference is a high legal standard." *Id*. at 1060. A showing of negligence or inadvertence is insufficient to establish an Eighth Amendment violation. *Jett*, 439 F.3d at 1096; *Estelle*, 429 U.S. at 105–06.

    b.  *Official Capacity Claims*

First, to the extent Scott sues all nine Defendants for money damages in their official capacities (*see* ECF No. 1 at 3), he has failed to state a claim. An "official-capacity suit is, in all respects other than name, to be treated as a suit against the entity" and as such are treated as claims against the State. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *see also Leer v. Murphy*, 844 F.2d 628, 631–32 (9th Cir. 1988) (finding claims against prison correctional officer, warden, and other officials in official capacity to be claims against State). As such, the Eleventh Amendment bars a prisoner's § 1983 claims for money damages against state actors sued in their official capacities. *Michigan State Police Dep't v. Will*, 491 U.S. 58, 66 (1989) ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."); *see also Dittman v. California*, 191 F.3d 1020, 1025–26 (9th Cir. 1999) ("The State of California has not waived its Eleventh Amendment immunity with respect to claims brought under § 1983 in federal court."). Thus, Scott's official-capacity claims against Defendants are dismissed as barred by the Eleventh Amendment. *But see Hafer v. Melo*, 502 U.S. 21, 31 (1991) ("[S]tate officials, sued in their *individual capacities*, are 'persons' within the meaning of § 1983.") (emphasis added).

    c.  *Supervisory Liability:  Warden Hill and Nurse Doe*

Scott also fails to state individual-capacity claims against Defendants Hill, the Warden of RJD, and Doe, who he describes as RJD's "Chief Nurse Executive." ECF No. 1 at 6. "Under Section 1983, supervisory officials are not liable for actions of subordinates on any theory of vicarious liability." *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013) (citation and internal quotation marks omitted). While there is no vicarious liability

under § 1983, a "supervisor may be liable only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Id*. (citation and internal quotation marks omitted).

Here, the Court presumes Scott suffered a serious medical need. But nonetheless, Scott fails to state a claim against Hill because he alleges no wrongful conduct or personal involvement on Hill's part related to a purported violation of his Eighth Amendment rights. *See Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). Instead, Scott merely alleges that, as warden, Hill was "on notice" as early as September 2017, that he needed TKR surgery because the information was "contained in his medical records." ECF No. 1 at 4. Scott asserts that during that time, Hill had a "responsibilit[y]" under the California Department of Corrections and Rehabilitation ("CDCR") Health Care Department Operations Manual § 2.1.1 to "'implement [and conduct] monitoring and evaluation'" of the prison's medical services, which he alleges extended to ensur[ing] [he] received access to necessary medical services for his TKR surgery on his left knee without substantial delay." *Id.* at 5. He further claims Hill bears some responsibility for his surgeries being "botched." *Id.* at 6.

However, none of the above allegations (and none of the attached exhibits) show Hill had personal knowledge of Scott's medical condition, any connection to the purported delay in surgery, or involvement in (or personal knowledge of) the results of Scott's surgeries. And Scott's allegation that Hill did not adhere to prison regulations concerning medical care does not establish that he acted with deliberate indifference to Scott's serious medical needs. *See e.g., Cousins v. Lockyer*, 568 F.3d 1063, 1070 (9th Cir. 2009) (stating violations of "CDCR operations manual" or other "state departmental regulations" do not establish Section 1983 liability unless state violation also causes federal constitutional deprivation) (citing cases); *Solomon v. Felker*, 2013 WL 5375538, at *12 (E.D. Cal. 2013)

("Plaintiff's allegation that the defendants failed to adhere to the prison's own institutional policies and procedures does not, by itself" give rise to a constitutional violation.). Therefore, Scott failed to state a claim against Hill. *See Crowley*, 734 F.3d at 977.

Scott also fails to state a claim against Chief Nurse Doe because, again, he fails to allege facts suggesting Doe had personal knowledge of his medical condition, care or surgeries. Scott cites to CDCR regulations and states Doe was "responsible" for "daily clinic operations," including "coordination and scheduling for timely access to necessary medical services." ECF No. 1 at 6–7. Yet no facts in the body of the Complaint or exhibits plausibly suggest Doe was personally involved in any alleged constitutional violation(s). Thus, Plaintiff has failed to state a claim against Doe. *See Edgerly v. City and County of San Francisco*, 599 F.3d 946, 961–62 (9th Cir. 2010) (stating that where there is no evidence that the supervisor was personally involved or connected to the alleged constitutional violation, the supervisor may not be liable).

Accordingly, the Court dismisses Scott's claims against Defendants Hill and Nurse Doe for failure to state a claim. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii) & 1915A(b)(1); *Iqbal*, 556 U.S. at 678.

    d. *Messler, Guldseth and Clayton*

Scott also fails to state individual-capacity Eighth Amendment claims against Defendants Messler, Guldseth and Clayton. As to all three doctors, Scott alleges they failed to adequately treat his pain by declining to prescribe him narcotics.[2] ECF No. 1 at 7–9. He

---

[2] Scott also appears to allege that Guldseth "fabricated" a chart notation indicating that Scott reported his pain was "7/10 down from 9–10/10" after a steroid shot. ECF No. 1 at 8; ECF No. 1-2, Ex. U at 122. He also alleges Clayton "falsely" noted Scott indicated his "pain was manageable" and he was "feeling better" after epidural shots. ECF No. 1 at 8; ECF 1-2, Ex. U at 129. There is no cognizable Eighth Amendment claim for the falsification of medical records in and of itself. *See Bartholomew v. Traquina*, 2011 WL 4085479, at *3 (E.D. Cal. 2011) ("The falsification of records itself is insufficient to state a cognizable claim of deliberate indifference to plaintiff's serious medical needs."); *Phillips v. Borders*, 2016 WL 11518600, at *5 (C.D. Cal. 2016) (same). And "[w]hile falsification or alteration of medical records may supply facts relevant to an Eighth Amendment claim of deliberate indifference to serious medical needs," *Crisp v. Wasco State*

points to medical records showing he received treatment from all three doctors. *See* ECF No. 1-2, Exs. S–U at 114–131. The records show Scott had visits with Dr. Messler prior to his surgery in 2018 and 2019, during which time Messler gave Scott steroid injections in his knees, and noted he was taking gabapentin and Tylenol No. 3 (with codeine) for pain. *See* ECF No. 1-2, Ex. S at 116–117. Scott was also receiving physical therapy during that period. *Id.* at 118. During visits with Guldseth in late 2019, Scott was offered Elavil or Cymbalta for pain but refused it. *Id.*, Ex. T at 121. Guldseth also noted Scott had recently received steroid shots for pain and that Scott's primary care physician had "recommended not using narcotics as [the] risk outweighs the benefits." *Id.* at 120–21. And as for Scott's visits with Clayton, the medical records suggest the visits primarily concerned Scott's issues with lower back pain and indicate he received lumbar epidural injections for it. *See id.*, Ex. U at 129. To the extent Scott's knee pain was discussed, it was noted that Scott was in the process of getting approved for TKR surgeries. *Id.*

Based on the above, it is clear Messler, Guldseth and Clayton all provided treatment for Scott's pain with non-narcotic medications, steroids, physical therapy, or a combination thereof. That Scott disagrees with the specific way they addressed his pain merely amounts to "differences of medical opinion" between himself and the three doctors as to the appropriate treatment for his pain. This is insufficient to rise to the level of deliberate indifference. *See Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) ("A difference of opinion between a physician and the prisoner—or between medical professionals— concerning what medical care is appropriate does not amount to deliberate indifference."); *see also Bowers v. Owolabi*, 2023 WL 5435973, at *5 (E.D. Cal. 2023) ("Plaintiff is not entitled to his choice of pain medication."). In sum, Scott has not plausibly alleged the treatment he received from Messler, Guldseth and Clayton "was medically unacceptable

---

*Prison*, 2015 WL 3486950, at *5 (E.D. Cal. 2015), even assuming the notations inaccurately described the *level* of Scott's pain, both Guldseth and Clayton noted Scott complained of knee pain and provided treatment for it. *See* ECF No. 1-2, Exs. T– U at 121–31. Therefore, Scott has not plausibly alleged they acted with deliberate indifference.

under the circumstances," and was chosen "in conscious disregard of an excessive risk to [his] health." *See Toguchi*, 391 F.3d at 1058; *see also Estelle*, 429 U.S. at 107. Therefore, Scott has failed to state an Eighth Amendment claim against Messler, Guldseth and Clayton. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii) & 1915A(b)(1); *Iqbal*, 556 U.S. at 678.

   e. *Bates and Jacobson*

Scott alleges Drs. Bates and Jacobson, both of whom performed his TKR surgeries,[3] were deliberately indifferent when they "botched" the procedures. ECF No. 1 at 9–10. Scott states that after the surgeries, he suffered "extreme pain" and swelling, caused at least in part by the presence of "loose hardware" in his knees. *Id.* Scott also claims Bates was responsible for a "13-month delay between being referred" for surgery and the surgery being performed. *Id.* at 9.

To the extent Scott alleges Bates and Jacobson "botched" his TKR surgeries, he fails to state a claim. His allegations that he suffered post-operative pain and swelling after a surgical procedure do not amount to deliberate indifference. Moreover, that the hardware implanted in his knees became "loose" after the surgeries amounts to, at worst, negligence or malpractice, both of which are insufficient to show deliberate indifference on the part of Bates or Jacobson.[4] *See Hamby v. Hammond*, 821 F.3d 1085, 1092 (9th Cir. 2016) ("A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment.").

Scott also fails to state a claim against Bates based on a purported delay of his surgery. Scott presents no specific facts as to how Bates "purposefully" caused delay or how it amounted to a "conscious disregard of an excessive risk" to Scott's health. *See id.*

---

[3] It appears Bates performed both of Scott's TKR surgeries, while Jacobson was involved only in the second TKR surgery on Scott's right knee. *See* ECF No. 1 at 9–10; *see also* ECF No. 1-2, Ex. M at 62, Ex. I at 42.

[4] Medical records from April 25, 2024 indicate Scott was then being treated for a possible "aseptic loosening of right TKA" and included a recommendation he be referred to a specialist. ECF No. 1-2, Ex. R at 108.

1   Medical records show Scott was first evaluated by an orthopedic surgeon on May 11, 2020.
2   ECF No. 1-2, Ex. U at 130. That surgeon did not perform TKR surgeries and therefore, he
3   referred Scott to Bates. Scott then had an initial tele-appointment with Bates on July 13,
4   2020, followed by an in-person appointment. *Id.* Scott had additional imaging of his knees
5   performed on March 21, 2021, and an evaluation by Bates on April 5, 2021, after which he
6   was medically cleared for the procedures on April 5, 2021. *Id.*, *see also*, Ex. E at 28, 32.
7   While Scott was awaiting surgery, records show he continued to be seen by health care
8   providers. *See generally id.*, Exs. S–U. In short, Plaintiff provides no facts suggesting the
9   amount of time from initial referral to his first surgery was due to purposeful conduct by
10  Bates or that the delay amounted to deliberate indifference.

11      Therefore, Scott has failed to state an Eighth Amendment claim against Bates and
12  Jacobson. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii) & 1915A(b)(1); *Iqbal*, 556 U.S. at 678.

13          f.      *Mohamed and Shakiba*

14      Finally, Scott alleges Drs. Mohamed and Shakiba violated the Eighth Amendment
15  by failing to adequately treat him after his surgery. Scott states Mohamed and Shakiba both
16  failed to prescribe appropriate pain medication. ECF No. 1 at 10–11. He also states they
17  failed to "ensure" he received corrective surgery after x-rays purportedly showed "possible
18  loosening of hardware" in his knees. *Id.* at 11.

19      Scott fails to state a claim against Mohamed and Shakiba. Medical notes from Scott's
20  visit with Mohamed show Scott was given morphine after his May 25, 2022 surgery, which
21  was discontinued on June 9, 2022, after which he received over-the-counter pain
22  medication. ECF No. 1-2, Ex. K at 53. That Scott believes he should have continued to
23  receive morphine amounts to no more than a difference of opinion. *See Toguchi*, 391 F.3d
24  at 1058. Furthermore, Scott's allegation that Shakiba ignored his post-operative pain is
25  belied by medical records which show that on June 19, 2023, Shakiba referred him for a
26  CT scan of his knees to determine if corrective surgery might be necessary. ECF No. 1-2,
27  Ex. X at 149. Again, Scott's dissatisfaction with the treatment provided by Shakiba
28  amounts to a mere difference of opinion. *See Sloan v. Oakland Police Dep't*, 376 F. App'x

738, 740 (9th Cir. 2010) ("[Plaintiff's] contentions against the doctors—that he should have received surgery, been given stronger pain medication, and should not have been forced to walk—are differences of medical opinions that do not give rise to an Eighth Amendment violation."). Therefore, he has failed to state a claim against Mohamed and Shakiba. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii) & 1915A(b)(1); *Iqbal*, 556 U.S. at 678.

### D. Leave to Amend

Given Plaintiff's *pro se* status, the Court **GRANTS** him leave to amend his Complaint, as detailed below. *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a *pro se* complaint without leave to amend [pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)] unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'") (quoting *Akhtar v Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012)).

If Plaintiff chooses to amend, he is cautioned that *all* relevant facts in support of his claim(s) must be alleged in the body of his amended complaint. As discussed above, while a plaintiff is free to include exhibits, he must "state the [relevant] factual evidence derived from the exhibit in his allegations [contained in his complaint] and may only cite to the exhibit to bolster/support his factual allegations." *See Quezada*, 2018 WL 6111289, at *3; *see also* Fed. R. Civ. P. 8(a).

## IV. CONCLUSION AND ORDER

Accordingly, the Court:

1. **GRANTS** Plaintiff's Motion to Proceed IFP (ECF No. 2).

2. **ORDERS** the Secretary of the CDCR, or his designee, to collect the $350 filing fee owed in this case by collecting monthly payments from the account in an amount equal to twenty percent (20%) of the preceding month's income and forward payments to the Clerk of the Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). All payments must clearly identify the name and case number assigned to this action.

3. **DIRECTS** the Clerk of the Court to serve a copy of this Order on Jeff

Macomber, Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001, by U.S. Mail, or by forwarding an electronic copy to trusthelpdesk@cdcr.ca.gov.

4. **DISMISSES** the Complaint in its entirety for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) & 1915A(b)(1).

5. **GRANTS** Plaintiff **sixty (60)** days leave from the date of this Order in which to file a First Amended Complaint which cures the deficiencies of pleading noted in this Order. Plaintiff's Amended Complaint must be complete by itself without reference to his original Complaint. *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.").

If Plaintiff fails to timely file a First Amended Complaint, the Court will enter a final Order dismissing this civil action based both on failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1), and failure to prosecute in compliance with a court order requiring amendment. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

**IT IS SO ORDERED.**

Dated:  May 27, 2025

Hon. William Q. Hayes
United States District Court